Herbeet, J.
The question of availability for work is not raised in this case. The only issue centers around the language of Section 4141.29, Revised Code, the pertinent part of which provides:
“(C) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual:
i i * # *
“ (8) Has left his most recent work for the purpose of attending an established educational institution, or is a student regularly attending an established educational institution during the school term or customary vacation periods within the school term.” (Emphasis added.)
Only the emphasized portion of subdivision (C) (8) is pertinent to the facts here. Appellee is a married man with dependent children, and it is undisputed that his primary occupation is that of a workman rather than a student. His record of employment by General for a year and a half prior to his enrollment in Youngstown College and of subsequent employment at the Isaly Dairy Company and Big M Super Market clearly establishes that fact. However, it cannot be said that he is not a “student.”
It is also undisputed that Youngstown Colleg-e is “an established educational institution.” The issue then narrows down to the single question as to whether he was ‘ ‘ regularly attending” this college.
*541 The original Unemployment Compensation Act, effective December 1936, did not contain any language such as we now find in subdivision (C) (8) of Section 4141.29, Revised Code. That language first appeared in an amendment effective October 1, 1941 (subdivision d (6) of Section 1345-6, General Code), and is still in the same form today, except for the elimination of the words, “if he,” before the words, “is a student.”
We therefore have a legislative pronouncement untouched for over 15 years and yet, so far as we can find, this is the first time that the particular question raised here has reached this court. It has received various interpretations in the courts below and in administrative decisions. To ascertain the legislative intent of that portion of paragraph 8 denying unemployment benefits to one who leaves his work for the purpose of attending an educational institution would be relatively simple and rational. However, it is difficult to assume that the General Assembly intended to penalize an unemployed workman whose secondary part-time activity was devoted to improving his education.
We are not confronted here with the proposition of an individual holding a part-time or full-time job while he is at the same time attending an established educational institution full time. Under such circumstances, the legislative intent comes through clearly that such an individual would be “regularly attending” within the meaning of the law and, whatever view this court might have of the legislative policy of such a provision, it would have no power to vary the clear intent of such policy.
If such a hypothetical individual just described should quit his college attendance simultaneously with his discharge for lack of work, he would then cease to be a student within the meaning of the law and therefore be eligible for benefits. We are reluctant to believe that the General Assembly intended such a result as this.
In State, ex rel. Cooper, v. Savord, Judge (1950), 153 Ohio St., 367, 92 N. E. (2d), 390, this court held that “the General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. It is the duty of the courts, if the language of a statute fairly permits or un *542 less restrained by the clear language thereof, so to construe the statute as to avoid such a result.”
The same general principle is also followed in State v. Nickles (1953), 159 Ohio St., 353, 112 N. E. (2d), 531, and in State, ex rel. Nemeth, v. Industrial Commission (1954), 161 Ohio St., 179, 118 N. E. (2d), 541.
Unfortunately, the General Assembly set no standards in paragraph 8 and did not distinguish between part-time and full-time workers or between part-time and full-time students, so that we can find no light there.
The Attorney General, in his brief, relies on three cases: Cornell, Admr., v. Schroeder, 94 Ohio App., 75, 114 N. E. (2d), 595; Rafferty v. Bureau of Unemployment Compensation, 6 C. C. H., Unemployment Insurance Reporter, 38576; and Connell v. Bureau of Unemployment Compensation, 6 0. C. H., Unemployment Insurance Reporter, 38668. In the Schroeder case, the claimant was separated from her employment on February 21,1950, filed her claim for compensation two days later and on March 15, 1950, entered a business school as a day student. The decision by the Court of Appeals in that case considers the availability of claimant as affected by her full-time attendance at the business school and is therefore distinguishable from this case.
The Rafferty case is similar in that there the claimant enrolled as a student in school after he was laid off because of lack of work. In the Commerce Clearing House Reports it does not appear clear whether he was attending school on a part-time or full-time schedule, but the fact is disclosed that he made little effort to find other work while in attendance at school. The Court of Common Pleas of Summit County affirmed the decision of the Board of Review denying him benefits, but it is interesting to note that the trial court in that case stated:
“ Section 1345-6 d (6), Ohio General Code, is very definite and unambiguous, and though this court can see no reason why such a penalty should be attached to a desire for education, yet as long as the statute is there the court cannot judicially amend the law nor change its meaning when that statute is susceptible to only one interpretation,, ”
*543 The trial court in the instant case likewise commented adversely upon the provisions of the statute.
In the Connell case, the claimant was laid off from employment due to lack of work on June 20, 1949, and started attending Akron University on September 19, 1949, on a 12-semester-hour credit basis. On October 5, 1949, he transferred to Kent State University on a 13-hour credit basis. That case also reached the Court of Common Pleas of Summit County and was decided on the authority of the Rafferty case.
In each of those three cases, it should be noted that the claimant entered school subsequent to the time of termination of employment for lack of work. They are distinguishable from the ease at bar for this and other reasons and are therefore not looked upon as persuasive here.
The case of Cornell, Admr., v. Dalpiaz, 70 Ohio Law Abs., 325, 128 N. E. (2d), 132, cited in the opinion of the Court of Appeals in the instant case is not applicable, as there the claimant was attending a so-called “trade school” which was held not to be an “established educational institution.”
It appears, however, from a review of decisions cited in the Commerce Clearing House Reports that in some instances the Board of Review held a claimant for benefits who was also a student not to be “regularly” attending in the sense of the statute. See 6 C. C. H., Unemployment Insurance Reporter, 38126, paragraph 0.71.
A search of dictionaries for a definition of the word, “regularly,” or phrase, “regularly attending,” does not prove very helpful. Webster’s New International Dictionary (2 Ed.) says: “in a regular, orderly, lawful, or methodical way.” Among other definitions in the Oxford English Dictionary, it is defined as “in the usual or customary manner.” Bailen tine says, “ in a regular manner; in a way or method accordant to rule or established mode; in uniform order; methodically; in due order. ’ ’
It might be argued that if a student were attending a night school one or two nights a week for a one-hour class, he was regularly attending inasmuch as he went regularly each week on the same nights. We cannot accept such an interpretation as the intent of the General Assembly here.
*544 An examination of Words and Phrases likewise shows a variety of treatment of the word, “regularly,” in the reported decisions. When used with the word, “employed,” in workmen’s compensation cases, the trend of decisions would indicate that these words are construed in favor of the workmen where the question of minimum number of employees is at issue. This is a liberal construction considering the purpose of the Workmen’s Compensation Act. Mindful, therefore, of the purpose of the Unemployment Compensation Act and of Section 4141.46, Revised Code, requiring liberal construction of its provisions, we must, in order to avoid a harsh result, construe “regularly attending” in the sense of what would be normal attendance for a student at such an institution who contemplated completing the assignment of studies necessary for graduation in the customary and usual schedule.
Under this construction, the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

ZimmeRmah, Bell, Taft and Matthias, JJ., concur.
Weygandt, C. J., and Stewart, J., dissent.